# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER SANGALANG, *et al*.,

    Defendants.

Case No. 2:08-CR-140-KJD-GWF

**ORDER**

Presently before the Court is Defendants' Motion for a New Trial and For Evidentiary Hearing (#334).  The United States filed a response in opposition (#346/347).  Though the Court granted several extensions, Defendants never filed a reply in support of their motion.

I.  Procedural History

On May 13, 2008, a federal grand jury indicted Defendants Christopher Sangalang and Deandre Patton in case number 2:08-CR-140-KJD-GWF (#1).  On April 13, 2010, the government filed a superseding criminal indictment (#232) charging Defendants with one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(B)(viii); two counts of possession with intent to distribute a controlled substance and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); two counts of unlawful possession of a short-barrel shotgun in violation of 26 U.S.C. §§ 5841, 5861(d), 5871 and 18 U.S.C. §§ 2; one count of

1    unlawful possession of firearms with obliterated serial numbers in violation of 26 U.S.C.§§ 5861(i),

2    and 5871 and 18 U.S.C. § 2; and finally, one additional count of possession with intent to distribute a

3    controlled substance against Christopher Sangalang only, in violation of 21 U.S.C.§§ 841(a)(1) and

4    (b)(1)(B)(viii).

5         Defendants filed motions asserting an array of defenses, including outrageous government

6    conduct (#67).  Defendants alleged that the government concocted a crime of violence, the home

7    invasion, for which they had no predisposition.  They further alleged that the gun and drug crimes

8    were instigated by informant Beckworth, whom they claimed had threatened them.  Defendants also

9    claimed that Agent McCarthy smoked illegal substances and drank beer, that the agents served beer

10   to minors, and that the agents destroyed evidence.  The Court held an evidentiary hearing before a

11   magistrate judge over the course of 15 days and heard the testimony of numerous witnesses,

12   including Agents Gomez and McCarthy and defendant Patton.  The United States Magistrate Judge

13   rejected Defendants' claims.  This Court adopted (#228) the Report and Recommendation (#209).

14        After a jury trial lasting from April 19, 2010, until April 23, 2010, the jury convicted

15   Defendants on all counts (#275).  During trial, Defendants presented much of the same theories to

16   the jury presenting an entrapment defense.   On December 7, 2010, the Court sentenced Christopher

17   Sangalang to 135 months (#308), and Deandre Patton to 97 months (#311).  On October 11, 2011,

18   Defendants filed the present, joint motion for new trial.

19   II.  Facts

20        Beginning in February 2007, undercover agents with the Bureau of Alcohol, Tobacco and

21   Firearms ("ATF") initiated an investigation referred to as "Sin City Ink." (Testimony of Mark

22   Gomez, Docket Number 287 (("#") at [page]: [line]") at 55:3-8).  The goal of operation "Sin City

23   Ink" was to target gang members who were believed to engage in violent criminal activity and

24   narcotics trafficking. (#287 at 55:11-16).  In September of 2007, undercover agents Mark Gomez and

25   Peter McCarthy opened a tattoo parlor, Hustler's Tattoo, to serve as a store front where Defendants

26   sold firearms and narcotics to them. *(#287 at 55:24-56;14).  Agent McCarthy played the role of the

1   store owner, while Agent Gomez acted as his assistant. (Testimony of McCarthy (#289 at 455:17-

2   456:1)).  The ATF, having installed video cameras and microphones, captured all of the transactions

3   that were conducted in Hustler's Tattoo on video recordings. (#287 (Gomez) at 60: 6-23).

4          The ATF used two confidential, paid informants, one of them being Richard Beckworth,

5   a.k.a. "Bones," who introduced the Agents Gomez and McCarthy to members of the 28th Street

6   gang. (#287 at 57:14-21).  Beckworth, was a known gang member who previously worked with

7   Defendant Sangalang in a tattoo shop prior to the investigation. (#287 at 58:12-15).  He was selected

8   by Agent Gomez because he was knowledgeable and actively involved in gang activity. (#287 at 58:

9   16-20).  According to Agent Gomez, Beckworth's only role in the investigation was to work on a

10   regular basis at Hustler's Tattoo and to introduce the agents to individuals engaged in criminal

11   activity. (#287 at 160:1-7).  On May 15, 2008, Beckworth left Las Vegas to work with the ATF on a

12   separate investigation in another city. (Testimony of Beckworth (#290 at 680:14-24)).

13          The second informant, Jaime Pedraza, a.k.a. "Fat Cat," was a co-worker of Beckworth's at

14   another tattoo shop where they both had worked. (#287 (Gomez) at 58:9-11); (#290

15   (Beckworth) at 658:17-659:13).  Pedraza did not have a significant role in the investigation, other

16   than to introduce the agents to Beckworth. (#287 (Gomez) at 58:9-11).

17          A.  November 1, 2007 Meeting

18          Agent Gomez and Agent McCarthy initially met Defendant Sangalang and Defendant Patton

19   at a local bar named "Mr. D's" on November 1, 2007.  (#287 (Gomez) at 64:6-21; Doc. 289

20   (McCarthy) at 456: 2-16).  In an effort to gain street credibility, the agents decided to orchestrate a

21   scenario in which they sought the assistance of known gang members under the pretext that they

22   were in need of protection at a local biker bar.  (#289 (McCarthy) at 456:17-457:2); (#287 (Gomez)

23   at 64:6-65:5).  The agents approached known 28th Street gang member Paul Ashley. (#287 (Gomez)

24   at 64: 18-25). Ashley showed up at Mr. D's with Defendants Sangalang and Patton. (#287 (Gomez)

25   at 65:6-7).

26

1    While at the bar, Beckworth informed Agent McCarthy that Patton had a firearm that he was

2    interested in selling; however, Patton wanted the money up front before he would make delivery.

3    (#289 (McCarthy) at 457:11-22).  Beckworth was then given money by the Agent McCarthy in order

4    to purchase the firearm. (#289 at 457:11-22).  Shortly after, Patton and Beckworth left "Mr. Dee's"

5    to retrieve the firearm from an unidentified source. (#290 (Beckworth) at 671:10-240); (#289

6    (McCarthy) at 457:18-458:11).  When both returned to the bar, they signaled Agent McCarthy to

7    meet them in the men's restroom to complete the transaction, and there Beckworth subsequently

8    handed Agent McCarthy a pistol. (#289 at 457:18-458:11).

9    Additionally, during this initial meeting at "Mr. D's," Defendant Sangalang informed Agent

10   Gomez that he was a member of the 74 Hoover Crip gang, and that Defendant Patton was a Blood,

11   both Los Angeles-based street gangs. (#287 (Gomez) at 65: 8-18).  Defendant Sangalang further

12   disclosed that he had sources in Southern California who could supply narcotics for the purpose of

13   trafficking them to Las Vegas. (#287 at 65: 8-18).

14   B.  December 13, 2007 Sale of Firearms

15   On December 13, 2007, Sangalang and Patton sold three firearms to the undercover agents,

16   which included a short-barrel or sawed-off shotgun, a Colt .45, and a handgun, for a total of

17   $1,200.00. (#287 at 66:4-11; 84: 14-19; 90:17-91:8).  During this sale, Defendants informed the

18   agents that they had a source who possessed firearms in Atlanta. (#287 at 80:2-6).  Beckworth was

19   used by the agents to arrange this meeting, and he was present at the shop during the transaction.

20   (#287 at 92:2-93-1).  Although present, Beckworth did not participate in any of the negotiations of

21   the deal. (#287 at 92:2-93-1).  The sale was solely between the agents and Defendants Sangalang and

22   Patton. (#287 at 92:2-93-1).

23   C. December 14, 2007 Sale of Firearms

24   The next day, December 14, 2007, Defendants Sangalang and Patton returned to Hustler's

25   Tattoo to sell an additional three firearms to Agents Gomez and McCarthy. (#287 at 93: 61-13).  The

26   firearms purchased by the agents on this day included three sawed-off short-barrel rifles with

4

1    obliterated serial numbers. (#287 at 99:23- 100:11).  Beckworth was not present for this meeting, nor

2    was he ever mentioned during the transaction. (#287 at 98:17-18. 436:2-11).

3           D. February 15, 2008 Sale of Narcotics

4           Over the course of several months during the investigation, Defendants Sangalang and Patton

5    repeatedly approached the agents about dealing in narcotics. (#287 at 153:3-6).  Until February 2008,

6    the agents were hesitant in pursuing narcotic transactions with Defendants because they only

7    discussed trafficking, which would have led the ATF investigation in a different direction. (#287 at

8    153:3-6); (#289 (McCarthy) at 424: 5-22).  However, on February 7, 2008, Defendants Sangalang

9    and Patton again pressed the agents about selling large quantities of methamphetamine.  (#289

10   (Gomez) at 112:13-24).  Defendants informed the agents that they had a source in Los Angeles who

11   had one pound of methamphetamine for sale. (#289 at 112:13-24).  Subsequently, on February 15,

12   2008, Defendant Sangalang sold Agent McCarthy seven grams of methamphetamine for $400.00 in

13   the back office of Hustler Tattoo's. (#289 (McCarthy) at 482:6-19; 485:20-486:16).  The narcotics

14   were supplied by Defendant Sangalang's cousin who was also present in Hustler's during this

15   transaction.  (#289 at 482: 6-19; 485:20-486:16).

16          E. March 25, 2008 Sale of Narcotics

17          After the initial narcotics sale on February 15, 2008, Agent McCarthy told Defendant

18   Sangalang that he was interested in ordering more drugs. (#289 at 486:21-487:4).  On March 21,

19   2008, Defendant Sangalang called Agent Gomez and notified him that he had just acquired a new

20   supply of methamphetamine he was interested in selling. (#287 (Gomez) at 118:1-25).  After a series

21   of telephone conversations, Sangalang and Patton met Agents McCarthy and Gomez at Hustler's

22   Tattoo on March 25, 2008, to complete the sale.  (#288 (Gomez) at 154:6-15).  At this meeting,

23   Defendants sold the agents one-and-a half ounces of methamphetamine for $2,250.00. (#288 at

24   158:4-25; 434: 25-436:5).  A video recording captured Defendants Sangalang and Patton making this

25   transaction with the agents. (#288 at 155:16-20).

26

1   F. March 27, 2008 Sale of Narcotics

2    Two days later, on March 27, 2008, an additional narcotics purchase occurred with the same

3 defendants again captured on video. (#288 at 167:7-10).  This time, approximately 120 grams of

4 methamphetamine were purchased by the agents for $200.00.  (#288 at 175:3-5; 178: 9-14).  The

5 narcotics were delivered to Sangalang by his California source on the same day. (#288 at 173:1-4).

6 Subsequently, Sangalang sold the narcotics to the agents inside of Hustler's.  (#288 at 173:1-4).

7   G.  2:08-cr-0163-JCM-GWF Case

8    Eventually, discussions with Agents Gomez and McCarthy turned to the robbery of a faux

9 drug house, in which Defendants conspired to rip off and murder undercover ATF agents posing as

10 drug dealers for more than five kilograms of cocaine.  Defendants Sangalang, Patton, and Alfredo

11 Flores were charged and convicted in a separate case (02:08-CR-0163-JCM(GWF) for their roles in

12 the robbery and drug conspiracies. Defendants have filed an identical motion for new trial in that

13 case.

14 III.  Standards under Rule 33 and Brady

15    Defendants conflate or intertwine two separate grounds in order to persuade the Court to

16 order a new trial.  First, Defendants assert that they are entitled to a new trial pursuant to Federal

17 Rule of Criminal Procedure 33 on the grounds of newly discovered evidence.  Second, Defendants

18 assert that the government withheld evidence of informant Beckworth's activities as an informant in

19 Texas in violation of Brady v. Maryland, 373 U.S. 83 (1963).

20 ***Standard for a Rule 33 Motion***

21    A defendant seeking a new trial upon the basis of newly discovered evidence under Fed. R.

22 Crim P. 33(a) must prove five factors:

23      (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the
      evidence; (3) the evidence is material to issues at trial; (4) the evidence is not (a)
24      cumulative or (b) merely impeaching; and (5) the evidence indicates that the
      defendant would probably be acquitted in a new trial.
25

26 United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005) (citing United States v. Kulczyk,

931 F.2d 542, 548 (9th Cir. 1991)).  In rare cases, "newly discovered impeachment evidence . . . is so powerful that a jury would find the [witness's] testimony totally incredible." United States v. Davis, 960 F.2d 820 (9th Cir. 1992).  Even then, the defendant must show that a new trial would probably result in an acquittal. Id.; United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2008).  It is axiomatic that the witness must be an important part of the government's case. See Giglio v. United States, 405 U.S. 150, 154-55 (1972).

***Brady***

For the court to find a violation of Brady, a defendant must show that (1) the prosecution suppressed or withheld evidence that was (2) favorable to the accused and (3) material to either guilt or punishment.  Brady, 373 U.S. at 87; see also United States v. Bagley, 473 U.S. 667, 675 (1985) ("The Brady rule is based on the requirement of due process. Its purpose is . . . to ensure that a miscarriage of justice does not occur . . . [by requiring the prosecutor] to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial . . . ").

Although the Brady doctrine mandates disclosure of certain evidence, it does not "automatically" require a new trial when exculpatory evidence is later found.  See Giglio, 405 U.S. at 154.  The evidence must be of such a value, that it would likely change the jury's verdict. Id.; see also United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense"); Cone v. Bell, 556 U.S. 449, 469-470 (2009) ("evidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different").  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Kyles v. Whitley, 514 U.S. 419, 434 (1995); Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987).

Just this year, the United States Supreme Court reaffirmed this high standard for affording a new trial to a defendant on the basis of newly discovered impeachment evidence in Smith v. Cain,

132 S. Ct. 626, 630 (2012) (explaining "that evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict").  In Smith, the Court needed only to ascertain whether the defendant's newly discovered impeachment evidence was "material." Id. After reviewing the evidence, the Court found that the defendant's evidence did meet this high standard. Id. at 630-631. First, the Court recognized that the state's entire case rested solely on one eye witness linking the defendant to the crime. Id. at 630.  Second, the newly discovered evidence directly contradicted the eyewitness's testimony at trial. Id. Third, the impeachment evidence was contained in the notes of the lead investigator for the case, and it was not disputed that the state failed to disclose it. For these compelling reasons, the Court reversed and remanded the case for further proceedings. Id. at 631. The facts here are entirely different.

The government has no duty to disclose neutral, irrelevant, speculative, or inculpatory evidence. Agurs, 427 U.S. at 109-10, n. 16. There is no obligation on the part of the government to draw favorable inferences from evidence or to forage for evidence available to the defense. United States v. Shyrock, 342 F.3d 948, 983-84 (9th Cir. 2003).  Recently, the Ninth Circuit rejected a defendant's claims that the government violated Brady/Giglio by not disclosing evidence from proffer sessions with a government witness, finding that any impeachment value would have been cumulative. United States v. Wilkes, 662 F.3d 524, 535-36 (9th Cir. 2011).  Quoting United States v. Kohring, 637 F.3d 895, 904 (9th Cir. 2011), the panel observed:

> This court has held that evidence is material if it is "of a different character than evidence already known to the defense." . . . Evidence is cumulative. . .if the grounds for impeachment are 'no secret' to the jury. Here, the jury knew that Combs had immunity and was also aware of Comb's involvement in the Cunningham bribery scheme.
>
> Moreover, the government's case did not hinge on Combs's testimony.  While Combs may have been a significant witness, the government presented over two-dozen other witnesses and extensive documentary evidence of Wilkes's guilt.

662 F.3d at 535-36.

///

///

8

<u>IV.  Analysis</u>

***Newly Discovered Evidence***

The first prong under the <u>Harrington</u> test requires that the evidence proffered by a defendant actually be "newly discovered." Evidence that is available at trial is not newly discovered. <u>Harrington</u>, 410 F.3d at 601.  Not only does the Court look at when the defendant was aware of the evidence, but it also considers the "substance" of the newly discovered evidence. <u>See</u> <u>Hinkson</u>, 585 F.3d at 1264 (where the court found that newly discovered affidavits by the defendant did not provide any substantially new information that was not already considered and rejected by the court).

Defendants' assertion that Beckworth's participation in other ATF investigations was not presented to the jury or that Defendants had no access to information concerning Beckworth's involvement in Texas is inaccurate.  Defense counsel questioned Beckworth as follows:

Q Okay. And you are still working for ATF, correct?

A No, ma'am.

Q Okay. You left Las Vegas around May 15, 2008; is that true?

A Yes, ma'am.

Q And then you relocated to another city.

A Yes, ma'am.

Q **And you worked on another investigation.**

A **Yes, ma'am.**

Q And you got paid by ATF separately for that other case.

A By that agency, yes, ma'am.

Q It's ATF that you were working for, is it not?

A Yes, ma'am.

Q Okay. So you were paid by different agents because it was a different investigation.

A Yes, ma'am.

Q And you were paid approximately how much, if you know, by ATF for that other case?

A I have no clue.

(#290 at 680 (emphasis added)).

Any probative value of this testimony would have been appropriately assessed by the jury. Moreover, the alleged new evidence fails to add any new substance to the record that was not already presented to the jury.  Defendants' entrapment theory was clearly presented at trial in the barrage of attacks against Beckworth's credibility, both in the examination of Beckworth as well as during the cross-examination of the agents. Simply because Beckworth faced similar allegations in subsequent, unrelated cases does not advance Defendants' argument or turn their coincidental allegations into evidence.  Defendants' pretrial claims of outrageous government conduct, which included entrapment allegations regarding Beckworth, were rejected by this Court.  Defendants' very same claims were rejected by the jury when it did not find entrapment.  It was not a surprising result considering the hours of audio and video recording evidence displaying the unequivocal words, demeanor and actions of Defendants as they sold guns and drugs to the undercover ATF agents without Beckworth's presence.

***Materiality and the Entrapment Defense***

Brady and Harrington both require that the newly discovered evidence be material.  See Agurs, 427 U.S. at 112 (materiality determination must be made "in the context of the entire record); see also Kyles, 514 U.S. at 421 (materiality "turns on the cumulative effect of all such evidence suppressed by the government"); see also Hinkson, 585 F.3d at 1265 (affirming the district court's finding that the probative value of the newly discovered evidence was not material because it was outweighed by the danger of confusion of the issues, misleading the jury, undue delay, and waste of time).  Materiality, as the Supreme Court explained in Kyles, depends upon the cumulative effect of the suppressed evidence and not merely the probative value of the suppressed evidence standing alone. 514 U.S. at 436.

Defendants accuse Beckworth of supplying them with guns and drugs that Defendants would then sell to the agents. They claim that without Beckworth's aid and encouragement they never would have committed the crimes.  In other words, they were entrapped into doing so.  The Court instructed the jury as to entrapment as follows:

> The government has the burden of proving beyond a reasonable doubt that each defendant was not entrapped. The government must prove one of the following:
>
> 1. the defendant was predisposed to commit the crime before being contacted by government agents, or
>
> 2. the defendant was not induced by the government agents to commit the crime.
>
> Where a person, independent of and before government contact, is predisposed to commit a crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.
>
> Inducement can be any government conduct creating a substantial risk that a person will engage in criminal conduct the person is not predisposed to commit. Inducement may include persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.
>
> The defense of entrapment fails if the defendant is predisposed to commit the crime charged before being contacted by government agents. In determining whether the defendant was predisposed you may consider several factors, including, but not limited to:
>
> > 1) the character or reputation of the defendant;
> >
> > 2) whether the government initially made the suggestion of criminal activity;
> >
> > 3) whether the defendant engaged in the criminal activity for profit;
> >
> > 4) whether the defendant evidenced reluctance to commit the offense that was overcome by repeated government inducement or persuasion; and
> >
> > 5) the nature of the inducement or persuasion supplied by the government.
>
> No single factor is controlling in your decision.

Jury Instruction No. 18, (#272).

Defendants have not put forth any new information that undermines confidence in the jury's conclusion that Beckworth's actions did not entrap them into engaging in criminal conduct.  See, e.g., United States v. Brunshtein, 344 F.3d 91, 101-02 (2d. Cir. 2003) (finding no violation of Brady

1   where allegedly suppressed evidence would not have been sufficient in establishing defendant's

2   entrapment defense).  The jury listened and considered Beckworth's testimony, which included a

3   lengthy and vigorous examination by multiple defense attorneys. (#290 (Beckworth) at 656-767).  In

4   order to accept Defendants alleged newly discovered testimony as material, this Court must make

5   additional inferences, unsupported in the evidence, to conclude that the government's confidential

6   informant actually induced the defendants to sell guns and drugs during the sting operation.  Having

7   personally observed Beckworth's demeanor and testimony during trial, the Court notes that no

8   reasonable juror could conclude that Beckworth was the mastermind behind Defendants' conduct.

9   Defendants do not argue that Beckworth's experiences in Texas by themselves constitute evidence of

10  inducement, but rather, that this Court should infer that the allegations indicate a pattern of conduct

11  by Beckworth casting doubt on his testimony.  As correctly argued by the government, this is classic

12  impeachment evidence, and an area thoroughly explored by Defendants at trial and rejected by the

13  jury.  See Wilkes, 662 F.3d at 535-36.

14        Even if this Court were to accept Defendants' tenuous argument that the Texas accusation

15  somehow means that Beckworth engaged in conduct that could entrap Defendants, Defendants would

16  still fail because the Government proved beyond a reasonable doubt that Defendants were not

17  entrapped because Defendants were predisposed to the conduct.  See United States v. Ross, 372 F.3d

18  1097, 1108-09 (9th Cir. 2004) (affirming the district court's finding that evidence was immaterial for

19  a *Brady* violation where the defense's new evidence only addressed inducement and presented no

20  facts to refute predisposition for their entrapment defense); see Jury Instruction #18 (#272).  The

21  facts adduced at trial – largely demonstrated by Defendants' own words and deeds – showed that

22  Defendants were clearly predisposed to committing the crimes of which they were ultimately

23  convicted.  In fact, the record in this case strongly demonstrates that not only were Defendants

24  predisposed to criminal activity, but that they were enthusiastic about committing future crimes and

25  boastful about their past criminal conduct.  See (#287 (Gomez), Trial Tr. 65: 8-18 (where Defendant

26  Sangalang explains Defendants' gang affiliation to Agent Gomez)); see id. at 161:7-10 (where Agent

1  Gomez explains how Defendants openly discussed their narcotics sources in Atlanta and Hawaii);

2  see id. at 112:13-24 (where on February 7, 2008, Defendants Sangalang and Patton asked agents if

3  they were interested in purchasing large quantities of methamphetamine).

4  ***Evidence merely impeaching and cumulative***

5      Motions for new trial are improper where the evidence proffered is "cumulative,

6  impeachment-related, or both" unless "the testimony was uncorroborated and provided the only

7  evidence of an essential element of the government's case." United States v. Waggoner, 339 F.3d

8  915, 919 (9th Cir. 2003); United States v. Marshall, 56 F.3d 1210, 1212 (9th Cir. 1995) (quoting

9  United States v. Davis, 960 F.2d 820, 825 (9th Cir. 1992)).  Newly discovered impeachment

10  evidence may be favorable and material when "the reliability of the witness may be determinative of

11  the defendant's guilt or innocence." United States v. Collins, 551 F.3d 914, 924 (9th Cir. 2009)

12  (quoting United States v. Bracy, 67 F.3d 1421, 1428 (9th Cir. 1995)); see also Hinkson, 585 F.3d at

13  1266 ("[T]he district court found the evidence served no purpose other than to impeach [the witness],

14  which doomed [defendant's] new trial motion under the fourth step of the Harrington test").  In a

15  similar case, the court in United States v. Berry denied a defendant's motion for new trial after

16  finding the newly discovered evidence was "no more than impeaching evidence." The court

17  explained that only in "limited" and "rare" cases "where the credibility of a key government witness

18  has been wholly discredited…." should such a motion be granted. 624 F.3d 1031, 1043 (9th Cir.

19  2010); see Smith, 132 S. Ct. at 629; United States v. Krasney, 607 F.2d 840 (9th Cir. 1975).

20      Essentially, the only basis for Defendants' motion for a new trial is that evidence of

21  Beckworth being found to have committed sentencing entrapment in the Lewis case during Judge

22  Godbey's re-sentencing hearing was not presented to the jury.  Assuming this information is relevant

23  and material, Defendants have not shown it to be any more than impeachment evidence of the same

24  theory that they presented at trial in this case.  For this Court to grant a new trial on the basis of

25  impeachment evidence alone, Defendants would have to establish that Beckworth involvement

26  affected an essential element of the government's case, determinative of their guilt or innocence.

13

1    This would be difficult to prove for several reasons.  First, Beckworth was not a witness

2  called by the government in this case.  Second, Beckworth was never directly involved with any of

3  the sales of drugs or guns.  There was no evidence that Beckworth introduced Defendants to Agents

4  McCarthy and Gomez.  In contrast, Agents Gomez and McCarthy testified about their direct

5  involvement with Defendants as Defendants engaged in overt and uninterrupted criminal acts over a

6  span of many months.  Most importantly, these overt and uninterrupted criminal acts were captured

7  by audio and video recordings.

8    Defendants' alleged newly discovered evidence is also cumulative.  During trial, Defendants

9  presented ample impeachment evidence to support their contention that Beckworth lacked

10  credibility: that Beckworth agreed to cooperate with the government as a paid informant (#290

11  (Beckworth), 660:5-18); that Beckworth had been arrested for armed robbery and kidnaping (Id. at

12  665:18-20); that Beckworth was a former member of the 28th Street Gang (Id. at 657:7-11); that

13  Beckworth never filed his income tax returns (Id. at 683:12-16); that Beckworth used drugs during

14  the course of the investigation (Id. at 684:12-18); and that Beckworth received favorable sentencing

15  from the District Attorney for helping the ATF (Id. at 693:16-25).  Additionally, defense counsel

16  accused Beckworth of sawing guns and manufacturing drugs. Id.

17  ***Even if a new trial was granted, the new evidence would not lead to acquittal***

18    Defendants have failed to show that their alleged newly discovered evidence would probably

19  result in acquittal.  See United States v. Marashi, 913 F.2d 724, 732 (9th Cir. 1990) ("[N]ewly

20  discovered evidence to impeach a government witness does not warrant a new trial when the

21  evidence would not have affected the jury's assessment of the witness' credibility and when the

22  witness was subjected to vigorous cross-examination"); see also Harrington, 410 F.3d at 601; United

23  States v. Endicott, 869 F.2d 452, 456 (9th Cir. 1989) (holding additional evidence of benefit received

24  by government informant was cumulative and insufficient to establish any reasonable likelihood that

25  false testimony could have affected the jury's verdict in light of other evidence); United States v.

26

14

1    Kenny, 645 F.2d 1323, 1344 (9th Cir. 1981) (affirming a district courts denial for a new trial because

2    the newly discovered evidence "lacked sufficient probative force to acquit").

3           Defendants have failed to meet their burden of demonstrating that a different result would

4    have reasonably occurred had this alleged newly discovered evidence been disclosed to the jury.

5    Because Beckworth's role in this case was of little significance, more of the same accusations about

6    Beckworth would likely have had no affect on the outcome of this case, especially when the Texas

7    conduct, even if true, happened after the investigation in this case.

8    ***Summary***

9           Defendants claim that they discovered evidence that undermines their convictions and that

10   the Government failed to disclose Beckworth's alleged misconduct in Texas, requiring a new trial.

11   This evidence centers on the impeachment of government informant Beckworth, also known as

12   "Bones," as it relates to their entrapment defense.  Specifically, Defendants assert that, after their

13   trial, they learned that Beckworth engaged in conduct similar to the conduct of which they accused

14   him in this case.  In two cases in the District of Texas, defendants accused Beckworth of

15   orchestrating gun and drug crimes.  The defendants in Texas all pled guilty; however, they filed

16   various claims about Beckworth.  There is no factual link between Beckworth and Defendants' sales

17   of firearms and narcotics in this case, unless the Court accepts defense counsel's proposition that

18   Beckworth, having congregated at Hustler's with Defendants somehow induced Defendants into

19   committing the crimes with which they were charged.  To accept such proposition, however, would

20   ignore the uncontroverted evidence that Beckworth did not introduce Defendants to the undercover

21   agents, another gang member, Paul Ashley, did.  The introduction occurred on November 1, 2007, at

22   Mr. D's bar, when Patton and Sangalang showed up as "muscle," and Patton later sold a firearm to

23   Agent McCarthy in the men's room there.  See (#287 (Gomez) at 65).  Accusations that Beckworth

24   orchestrated the event, thoroughly addressed at the trial herein, failed to convince a jury that

25   Defendants were entrapped into committing crimes.  Moreover, the agents testified that they

26

1  purposefully distanced Beckworth from direct involvement with Defendants because, as they

2  testified, you cannot trust confidential informants.

3      The Court agrees with the government that in this action defendants' motion under Rule 33

4  fails to meet the five factors in <u>Harrington</u> warranting a new trial. The alleged, "newly discovered

5  evidence" is immaterial to issues at trial, it is cumulative and impeaching, and it would not have

6  altered the jury's verdict.  Further, for the same reason, Defendants fail to meet the materiality burden

7  under <u>Brady</u>.  Even if the Texas allegations about Beckworth were true, the Texas investigations

8  happened long after the investigation here. As such, similar accusations about Beckworth in Texas

9  merely further an attenuated argument that lacks a sufficient basis for this Court to grant a new trial

10 based on newly discovered evidence under Rule 33(b)(1).

11 <u>IV.  Conclusion</u>

12     Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for a New Trial and For

13 Evidentiary Hearing (#334) is **DENIED**.

14     DATED this 26th  day of September 2012.

15

16

17                                              _____

18                                              Kent J. Dawson
                                                United States District Judge

19

20

21

22

23

24

25

26